**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 07-22298-CIV-HUCK/O'SULLIVAN**

NELSON SANDOVAL, RICHARD TURICIOS,
and others similarly situated,

       Plaintiffs,

vs.

FLORIDA PARADISE LAWN MAINTENANCE,
INC., FLORIDA PARADISE LANDSCAPING,
and LUIS VIGOA,

       Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court on Defendants' Motion for Summary Judgment, filed March 25, 2008 (D.E. #45). The Court has reviewed the Motion, Plaintiff's Response thereto, and the pertinent parts of the record.[1] The Court is duly advised in the premises. For the following reasons, the Motion is GRANTED.

**BACKGROUND**

Individual Defendant Luis Vigoa, Sr. is the president and owner of the two corporate Defendants: Florida Paradise Lawn Maintenance ("LM") and Florida Paradise Landscaping ("FPL"). Luis Vigoa, Sr. Aff., D.E. #48 at 1. LM performed a "grading" service for its customers, or a leveling of the ground. Luis Vigoa, Sr. Depo., D.E. #20-3 at 16-17; *see also* Luis Vigoa, Jr. Depo., D.E. #53-4 at 10. FPL plants trees for its customers. Luis Vigoa, Sr. Depo., D.E. #20-3 at 20; *see also* Luis Vigoa, Jr. Depo., D.E. #53-4 at 10. Neither side disputes that Plaintiffs performed "grading" work for LM.

Plaintiff Nelson Sandoval filed suit under the Fair Labor Standards Act ("FLSA") in this Court against LM and the individual Defendant on August 31, 2007. *See* D.E. #1. This Court has jurisdiction over the FLSA claim under 29 U.S.C. § 216(b), which allows plaintiffs seeking unpaid

---

[1] Defendants did not file a reply.

overtime wages to maintain a suit against an employer in a federal or state court competent jurisdiction "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

On September 17, 2007 Plaintiff filed an Amended Complaint adding a new plaintiff, Richard Turicios. *See* D.E. #5. On January 17, 2008 Plaintiffs filed a Second Amended Complaint adding the second corporate Defendant, FPL. *See* D.E. #23-2, 26. On March 25, 2008 Defendants filed a motion for summary judgment, which is now ripe for review. *See* D.E. #45.

## ANALYSIS

### A.    Legal Standard

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. "In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (citations omitted). "The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one." *Id.* (quoting *WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988)). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252-53.

Further, while the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id.* at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely

colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

**B.      Analysis**

Plaintiffs have sued Defendants under the FLSA, claiming that they worked in excess of forty hours per week for Defendants and did not receive overtime pay.  The FLSA provides that

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  As defined in 29 U.S.C. § 203(b), "commerce" means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."

In their Motion for Summary Judgment, Defendants make two main arguments.  First, they argue that the FLSA's overtime requirements do not apply to Plaintiffs because they were not "employees" of Defendants, but rather independent contractors.  Second, they argue that the FLSA's overtime requirements do not apply because Plaintiffs' work had no connection to "commerce " as it is defined under the FLSA.  The Court considers each argument in turn.

**1.      "Employees" or "Independent Contractors"**

Defendants argue in their Motion for Summary Judgment that the FLSA's overtime requirements do not apply to Plaintiffs because they were independent contractors, and point out that "[t]he FLSA does not apply to independent contractors."  *Murray v. Playmaker Servs. LLC*, 512 F. Supp. 2d 1273, 1276 (S.D. Fla. 2007).  Indeed, the FLSA only applies to an "employee," defined as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  The FLSA defines "employ" as "to suffer or permit to work," *id.* at § 203(g), and defines an "employer" as "any person acting . . . in the interest of an employer in relation to an employee," *id.* at § 203(d).  Courts have determined that "[a]n entity 'suffers or permits' an individual to work if, as a matter of *economic reality*, the individual is dependent on the entity." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996) (emphasis added) (citing *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)).  "The touchstone of 'economic reality' in analyzing a possible employee/employer relationship for

3

purposes of the FLSA is dependency." *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1318 (S.D. Fla. 2001).

In applying this "economic reality" test, courts look to a number of factors to distinguish employees from independent contractors. These factors include:

(1)    the nature and degree of control of the workers by the alleged employer;

(2)    the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3)    the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

(4)    whether the service rendered requires a special skill;

(5)    the degree of permanence of the working relationship; and

(6)    whether the service rendered is an integral part of the alleged employer's business.

*Id.* at 1319. "No one factor is controlling, nor is the list exhaustive. . . . The weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case." *Id.*; *see Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. Appx. 782-83 (11th Cir. 2006). "It is dependence that indicates employee status. . . . [T]he final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit." *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976).[2]

Here, applying the "economic reality" test to the facts of this case, the only evidence in the record relevant to the first factor regarding the nature and degree of control over the alleged employees is Luis Vigoa, Sr.'s testimony that it was he who decided how much work Plaintiffs would do, not Plaintiffs themselves. D.E. #20-3 at 35.

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

As for the second factor, the alleged employees' opportunity for profit or loss depending on their managerial skill, the only relevant evidence in the record thus far is Luis Vigoa, Sr.'s testimony that Plaintiffs were paid by the job, not by the hour.  *Id.* at 32, 43.

As for the third factor, the alleged employees' investment in equipment or materials or employment of helpers, Luis Vigoa, Sr. testified that "we purchase" the plants unloaded and installed by those working for FPL.  The Court takes this to mean that FPL, LM and/or Luis Vigoa, Sr. purchased the plants used in FPL's landscaping services, not Plaintiffs.  *Id.* at 21-22.[3]

As for the fourth factor, whether the services rendered required any special skill, there does not appear to be any evidence thus far as to whether "grading" or leveling the ground requires any special skill.

As for the fifth factor, the degree of permanence of the relationship, Turicios stated in his affidavit that he began working for "the Defendant" (he does not specify which corporate Defendant) on or about September 15, 2003, and continued working for a duration of three years.  D.E. #53-3 at 1.  Turicios stated in his affidavit that he and Sandoval worked exclusively for "Defendants" and were completely dependant on "Defendants" for their economic livelihood.  *Id.* at 2.

As for the sixth factor, whether the service rendered is an integral part of the alleged employer's business, Turicios stated in his affidavit that he drove a truck, unloaded landscaping products, and leveled the ground prior to the installation of landscaping products.  *Id.* at 1.  According to Luis Vigoa, Jr., Turicios and Sandoval operated machinery in connection with their duties for LM, which the Court presumes to be the same land-leveling machines referenced by Luis Vigoa, Sr. in his deposition.  Luis Vigoa, Jr. Depo., D.E. #53-4 at 15; Luis Vigoa, Sr. Depo., D.E. #20-3 at 21.  According to Luis Vigoa, Sr., leveling the ground and landscaping are the *only* services provided by LM and FPL, respectively.  D.E. #48 at 1.

The Court finds, drawing all reasonable inferences from the evidence in the light most favorable to Plaintiffs and resolving all reasonable doubts in their favor, as the Court must at this stage, that there is a genuine issue as to whether Plaintiffs were employees for LM (and possibly for FPL), as opposed to independent contractors.  Defendants argue in their Motion for Summary

---

[3] Luis Vigoa, Sr. stated in his deposition that Plaintiffs never did any work for FPL, the tree planting company.  D.E. #20-3 at 18-19.  However, in his affidavit, Turicios states that he "regularly as part of [his] job" both leveled the ground *and* unloaded landscaping products for installation, including various types of trees and insecticides.  D.E. #53-3 at 1.

Judgment that Plaintiffs were not employees but rather subcontractors, emphasizing evidence that Plaintiffs signed agreements to that effect.  Luis Vigoa, Sr. Depo., D.E. #20-3 at 31-32.[4]  However, regardless of the existence of any such signed agreements, there is still a genuine issue as to whether Plaintiffs were employees or independent contractors.  As stated above, it is the "economic reality" of the situation that is relevant in this respect, not the labels the parties attach to their relationship. Indeed, "[w]hether or not the parties intended to create an employment relationship is irrelevant. . . . Likewise, merely labeling an individual as an employee or an independent contractor is not dispositive."  *Santelices*, 147 F. Supp. 2d at 1319; *see Rutherford Food*, 331 U.S. at 729 ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]."); *see also, e.g.*, *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 769 (D. Md. 2008) ("[T]he labels that parties themselves attach to their relationship are not controlling; even if a contract clearly defines the relationship as one of client/subcontractor, it may still constitute an employer/employee relationship for purposes of the FLSA."); *Ansoumanaj v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003) ("An employer's characterization of an employee is not controlling . . . for otherwise there could be no enforcement of any minimum wage or overtime law.").

**2.     "Enterprise" Coverage under the FLSA**

Defendants also argue in their Motion for Summary Judgment that the FLSA's overtime requirements do not apply to them because Plaintiffs' work had no connection to "commerce" as it is defined under the FLSA, which is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  The FLSA requires employers to pay overtime compensation where their employees themselves are "engaged in commerce or in the production of goods for commerce," or where they are employed in an enterprise that is "engaged in commerce or in the production of goods for commerce," and work in excess of forty hours per week.  29 U.S.C. § 207(a)(1). Thus, under FLSA an employer is required to pay overtime compensation if the employee can establish a connection to interstate commerce under either "enterprise coverage or individual coverage." *Thorne*

---

[4] Luis Vigoa, Sr.'s affidavit stated that such agreements were provided as Exhibits 2 and 3, but no such documents were attached.  D.E. #48 at 2.

*v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006). Here, Plaintiffs appear to argue for enterprise coverage under the FLSA.[5]

In relevant part, an "[e]nterprise engaged in commerce or in the production of goods for commerce" is an enterprise that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and "whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

Further, in relevant part, an "enterprise" is defined as "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor." *Id.* at § 203(r)(1). "Thus, three elements must coexist if defendants are to be considered a single enterprise: (1) related activities, (2) unified operation or common control, and (3) a common business purpose." *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1366 (5th Cir. 1973).[6]

Regarding the second element, unified operation or common control, Luis Vigoa Sr. testified that the services performed by LM and FPL respectively "[didn't] have anything to do with [each]

_____

[5] In an abundance of caution, the Court briefly undertakes the individual coverage analysis. In order for an employee to come within the FLSA's overtime wage requirement individually, he must demonstrate that he was "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). "The Supreme Court has articulated that it is the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Thorne*, 448 F.3d at 1266 (quoting *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)). Thus, for an employee to be "engaged in commerce" under the FLSA, he "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Id.* There is no suggestion in this case that either Plaintiff worked for an instrumentality of interstate commerce, regularly used the instrumentalities of interstate commerce, or engaged in the production of goods for interstate commerce.

[6] *See Bonner*, 661 F.2d at 1209.

other." D.E. #20-3 at 20.  However, there appears to be some evidence on the record suggesting that LM and FPL were unified in operation or common control.  For example, while Luis Vigoa, Sr. testified that Plaintiffs worked exclusively for LM, there is evidence to suggest that employees of FPL directed and supervised their work.  Luis Vigoa, Jr., the individual Defendant's son, testified in his deposition that he was employed only by FPL, not LM.  D.E. #53-4 at 4, 13-14.  However, he also testified that he supervised and directed the work of Plaintiffs.  *Id.* at 15-16.  Turicios stated in his affidavit that both Luis Vigoa, Jr. and Luis Vigoa, Sr. supervised his and Sandoval's work.  D.E. #53-3 at 1-2.  Further, Luis Vigoa, Sr. stated in his deposition that an FPL employee by the name of Toribio oversaw Plaintiffs' work.  D.E. #20-3 at 33-34.  Further, Luis Vigoa, Sr. is the president and owner of both companies.  D.E. #48, at 1.  While Luis Vigoa, Jr. testified that LM and FPL maintain separate offices in separate buildings, D.E. #53-4 at 22, Luis Vigoa, Sr. testified that LM and FPL used the same address, D.E. #20-3 at 52.

Finally, there is also some evidence to suggest that the businesses had related activities and a common business purpose related to landscaping - one company leveled the ground on customers' property, and the other installed trees - and Luis Vigoa, Sr. testified that LM and FPL worked at the same job sites, D.E. #20-3 at 19-20.

Thus, the Court finds there is at least a genuine issue of material fact as to whether LM and FPL can be considered a single enterprise for enterprise coverage purposes.  Given this, there is also a genuine issue of fact as to whether that single enterprise meets the $500,000 in gross sales requirement.  This is because Plaintiffs submitted a tax return and income statements for FPL for the years 2003, 2004, 2005, and 2006, showing that FPL did well over $500,000 in gross sales for each of those years.  D.E. #53-2.  Plaintiffs did not submit any financial information as to LM, but since there is a genuine issue as to whether those two businesses constitute one "enterprise," FPL's financial information suffices for both corporate Defendants at this stage.[7]

Regarding the other prong of enterprise coverage, the Court must examine whether there is a genuine issue as to whether the enterprise "ha[d] employees engaged in commerce or in the production of goods for commerce," or "ha[d] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C.

---

[7] The Court also notes that Defendants do not argue there is no genuine issue of fact as to this prong of enterprise coverage in their Motion for Summary Judgment.

§ 203(s)(1)(A)(i).  According to the regulations fleshing out the FLSA,

> [a]n enterprise . . . will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if during the annual period which it uses in calculating its annual sales for purposes of the other conditions of these sections, it regularly and recurrently has at least two or more employees engaged in such activities.  On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238.

Here, as explained above, there is at least a genuine issue of fact as to whether Plaintiffs were "employees" of LM.  Plaintiffs apparently seek to use their own work as "employees" to satisfy the interstate commerce requirement of enterprise coverage.  Turicios Aff., D.E. #53-5 at 1; Pls.' Resp., D.E. #52 at 3-4.

Defendants have offered evidence in support of their argument that there is no genuine issue as to the interstate commerce requirement of enterprise coverage.  In his deposition, Luis Vigoa, Jr. stated that FPL's trees and shrubs always come from within Florida.  D.E. #53-4 at 13.  Luis Vigoa, Sr. referred to one of FPL's tree suppliers, and stated that the trees are grown in Florida.  D.E. #20-3 at 22.  Luis Vigoa, Sr. also stated in his affidavit that "[n]either company conducts any business outside the State of Florida nor relies on any trade or commerce from outside the State of Florida." D.E. #48 at 2.  Further, he stated that "[n]either company purchases products, plants, or trees outside of the State of Florida," and that "[o]n a regular and continual basis, both companies do not conduct business involving in any way interstate commerce."  *Id.*  He also stated that LM's grading work is always conducted within Florida, and FPL's landscaping work is always conducted within Florida. *Id.* at 1.

Plaintiffs, however, have not offered *any* evidence in support of this prong of enterprise coverage.  Plaintiffs suggest in their Response to Defendants' Motion that merely satisfying the $500,000 in gross sales requirement should be sufficient to survive summary judgment and that the Court should presume satisfaction of the interstate commerce requirement.  This is incorrect.  While the burden on the party moving for summary judgment is great, the opposing party does have a duty to present *some* affirmative evidence to demonstrate a genuine issue for trial.  *Anderson*, 477 U.S. at 252.  For example, in *Scott v. K.W. Max Investments, Inc.*, the court affirmed summary judgment

in favor of the defendants where the plaintiff failed to offer evidence sufficient to raise a genuine issue as to the interstate commerce requirement of enterprise coverage. 265 Fed. Appx. 244 (11th Cir. 2007). In sum, Plaintiffs have failed to offer any evidence showing there is a genuine issue as to the interstate commerce requirement of enterprise coverage.[8]

## CONCLUSION

For the reasons set forth above, and even drawing all inferences from the evidence in the light most favorable to Plaintiffs, as the Court must in the context of a summary judgment motion, the Court finds no genuine issue as to whether Defendants' employees engaged in interstate commerce or in the production of goods for interstate commerce, or handled, sold, or otherwise worked on goods or materials that had been moved in or produced for interstate commerce. Accordingly, it is hereby ORDERED and ADJUDGED that Defendants' Motion for Summary Judgment is GRANTED.

DONE and ORDERED, in Chambers, Miami, Florida, this April 17, 2008.

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Magistrate Judge O'Sullivan
All counsel of record

---

[8] Plaintiffs suggest that the Court delay ruling on Defendants' Motion until Plaintiffs have had an opportunity to conduct further discovery, namely, to depose the corporate representatives for two landscaping supply companies "to provide testimony regarding the origin of the landscaping products sold to Defendants' business as is relevant to the issue of interstate commerce." D.E. #52 at 4. However, Plaintiffs did not file the proper motion under the Federal Rule of Civil Procedure 56(f) for such relief. The Court notes that Plaintiffs learned the names of some of Defendants' suppliers in the course of Luis Vigoa, Sr.'s and Luis Vigoa, Jr.'s depositions in early January 2008. D.E. #20-3 at 22; D.E. #53-4 at 11-13. Yet Plaintiffs apparently did not schedule depositions for the corporate representatives of these suppliers until April 2008, one day before the close of discovery. See Pls.' Resp., D.E. #52 at 4. Moreover, the Court previously granted Plaintiffs' motion for an extension of the discovery deadline, giving the parties nearly one extra month to complete discovery. See D.E. #39. Plaintiffs have had ample time to take the discovery necessary to oppose Defendants' Motion for Summary Judgment.